J-A29036-24

2025 PA Super 52

| | | |
|---|---|---|
| AUDRA MCGEE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMIE MCDOWELL | : | |
| | : | |
| Appellant | : | No. 765 WDA 2024 |

Appeal from the Order Entered May 23, 2024
In the Court of Common Pleas of Greene County
Civil Division at 233 A.D. 2022

BEFORE:  OLSON, J., LANE, J., and BENDER, P.J.E.

OPINION BY BENDER, P.J.E.:                    **FILED:  March 4, 2025**

Jamie McDowell (Father) appeals from the trial court's order denying his exceptions to the order "affirm[ing] the September 25, 2023 order [*sic*[1]] as a final custody order."  Order, 5/23/24.  Due to procedural errors, we vacate the order and remand for further proceedings.

*CASE HISTORY*

Father and Audra McGee (Mother) are the parents of an eight-year-old son, C.M. (Child), who was born in January 2017.  On March 29, 2022, Mother filed a complaint for custody in which she sought primary physical custody of Child.[2]  **See** Complaint for Custody, 3/29/22, at 2; **id.** at 3 (requesting the

---

[1] There is no order dated September 25, 2023.  The Hearing Officer issued an opinion and recommended order dated September 28, 2023, and the trial court entered an order adopting the recommended order on October 2, 2023.

[2] The Child Custody Act defines primary physical custody as the "right to assume physical custody of the child for the majority of time."  23 Pa.C.S. § 5322(a).

"court grant [Mother] PRIMARY physical and legal custody of [C]hild, C.M., and partial physical custody to [Father]").

On February 7, 2023, the parties entered into a consent order which provided for equally shared physical custody, on a "3-4/4-3 schedule, alternating weekly." Interim Custody Consent Order, 2/7/23, at 4. The parties also agreed Child would "be enrolled in the Uniontown School District." *Id.* at 3. As the order was entered on an interim basis, the trial court scheduled a status conference for July 24, 2023. On June 20, 2023, the court "*sua sponte* continue[d] the [s]tatus [c]onference" to July 31, 2023. Order, 6/20/23.

> At the July 31, 2023 status conference, Mother's counsel stated:
>
> At this point, things are in [Mother's] opinion[,] going less than ideally for [C]hild and we'd like to proceed with a full hearing. [Father's counsel] and I have touched base … to talk about some collateral issues under the [February 7, 2023 consent order]. I think the parties can move together working on those. But ultimately, I think the [c]ourt will have to make a final decision on physical custody.

N.T., 7/31/23, at 4. Father's counsel confirmed, "for the most part[,] that's a correct recitation of what's going on." *Id.*

Mother's counsel also reiterated that Mother was seeking primary physical custody of Child. *Id.* at 6. Counsel stated that Mother "believes [C]hild being with her primarily is in [C]hild's best interest," and Mother was "seeking a reduction further than just three days a week for Father." *Id.* at

6-7.  Both counsel agreed the parties were sharing physical custody "fifty-fifty."  *Id.*  They also agreed they would need one day for a trial.  *Id.* at 7.

The trial court then addressed counsel and the parties, stating:

> …  I can't imagine asking a stranger to decide my custody, but that's why I'm here if you can't [agree].  …
>
> If you can't, I won't hold that against you.  But I think [] counsel will tell you, even if you give up more than you think you should in an agreement, it's almost always preferable t[o] going to a custody trial[, f]or many reasons.  [Trial is] … contentious [and] stressful.  It's stressful on your child.  ...  So I would encourage you to keep working [on an agreement].
>
> …  [I]n my mind[, …] custody [] starts out as a fifty-fifty roughly, and then there can be reasons to [deviate].  And I've done it … many times.  But in my mind, it starts off as something in that range and then if there[ are] reasons to adjust it, we'll adjust it.
>
> You both have experienced custody counsel.  You need to listen to their advice.  But, you know, bear in mind that the least stressful, best situation for you and your child is — ninety-nine percent [of the time] is to reach an agreement.
>
> So I would encourage you to do that.  Keep the lines of communication open and … you have to look at it from the standpoint of … I want to spend as much time with [Child] as I can, but I also have to do … what's in [C]hild's best interest[.]  …
>
> [I]f you've never been through a custody trial before, … it's uncomfortable.  And … you're [giving information] to a stranger and you're giving … custody of your child [to] a stranger to decide.  And that is [my] job.  Do it all the time.  Not one of my favorite things to do.  But very rarely do you hear people say, well, I really regret reaching an agreement.  I really wish I would have went to a trial.  …  You hear the opposite of that.
>
> And you know, custody is always open [to modification].  What you agree to today might need [to be] revisited in a year.  You have a young child.  You're going to be dealing with this for a long time.  So it's never a final order.  …
>
> So lastly, I will tell you … and maybe your counsel already brought it up …, you have the option to have a record hearing in front of

- 3 -

the Custody Hearing Officer [(Hearing Officer),] if you choose. This [case] is eligible for a hearing before me. So if you don't both agree to go to a hearing in front of the [] Hearing Officer — a record hearing — it would be before me.

There are advantages and disadvantages to that. You can [discuss] those with your counsel. The chief disadvantage is some of your appeal rights are … I don't want to say compromised, but limited. But the advantage is that you'll get this settled much sooner. You'll get on the calendar a lot quicker than you will with me. So it's not going to be hanging out there.

So talk to your counsel…. [O]therwise, we will schedule it for a one-day custody trial. I have no idea when that will be, but it's not going to be next week. It's going to be a while, okay?

So in the meantime, keep those lines open. Hopefully you all can reach an agreement[,] … but if you don't[,] and you don't agree to go before the [H]earing [O]fficer for a record hearing, then we'll see you here for that custody trial, okay?

*Id.* at 8-11.

According to Mother, the parties "both consented" to proceeding before the Hearing Officer. Mother's Brief at 13. Father does not disagree, although he notes the "court gave the parties 'the option' of a hearing before the court or a hearing before the [H]earing [O]fficer, even though the matter [involved] primary custody."[3] Father's Brief at 12-13. On August 1, 2023, the trial court scheduled a hearing based on "the parties now wishing to proceed … before the Hearing Officer." Order, 8/1/23.

The parties appeared before the Hearing Officer on September 5, 2023. On September 28, 2023, the Hearing Officer issued an opinion and recommended order. The Hearing Officer recommended, *inter alia*, that the

---

[3] Father's appellate counsel did not represent Father when he agreed to proceed before the Hearing Officer.

parties exchange custody after school or at 5:00 p.m., with Mother having primary physical custody four days a week (Thursday through Monday), and Father having custody three days a week (Monday through Thursday). In Father's words, the Hearing Officer also "pulled [C]hild from [the school] where he was attending first grade[,] and ordered that thereafter, [C]hild would attend [a school] in [M]other's home district." Father's Brief at 13.

The trial court docket indicates that the Hearing Officer's opinion and recommended order was not filed when the Hearing Officer issued it on September 28, 2023. On October 2, 2023, the trial court issued an order "accept[ing] the Recommendation" and "adopt[ing] and incorporat[ing] it herein as an [o]rder of this [c]ourt." Order, 10/2/23.

Father filed exceptions to the October 2, 2023 order.[4] Mother filed an answer to the exceptions, and argument was scheduled for January 24, 2024. At the request of Father's newly-retained counsel, argument was continued to March 19, 2024, and May 15, 2024.[5] On May 2, 2024, Father filed a brief in support of exceptions. Mother filed a brief in opposition to exceptions on May 10, 2024.

---

[4] After filing Father's exceptions, Father's counsel was elected District Attorney in a neighboring county. Father retained new counsel, who has represented Father since entering her appearance on December 12, 2023.

[5] At motions court, Father's counsel stated that she "took this case … to finish [Father's] *de novo* appeal, or his appeal to [the trial court]," and noted that she needed time to obtain and review the hearing transcript. N.T., 5/2/24, at 3-4.

The trial docket does not indicate that argument occurred as scheduled on May 15, 2024, and there is no docket entry on that date. The next docket entry is the order from which Father appeals. The order states:

> AND NOW, this 22nd day of May, 2024, after considering the exceptions filed and the briefs for and against, the [c]ourt now DENIES [the exceptions] and affirms the September 25, 2023 order as a final custody order.

Order, 5/23/24.[6]

Father filed a timely notice of appeal and concise statement of errors pursuant to Pa.R.A.P. 1925(a)(2)(i). **See** Matters Complained of on Appeal, 6/21/24, at 1-3. Father raised eight issues in which he claimed errors of law and fact. **Id.**; **see also** Father's Brief at 13. On July 1, 2024, the trial court filed a "Statement Pursuant to Pa.R.A.P. 1925." Although the court acknowledged that Father had filed a concise statement, the court stated that it "relies on its Order dated May 22, 2024, attached hereto, with no additions to the record." Statement Pursuant to Pa.R.A.P. 1925, 7/1/24. Likewise, when responding to this Court's inquiry regarding transmission of the record, the trial court stated that "the [c]ourt's [Rule] 1925 [Statement] was entered, relying on its Order of May 22, 2024." Letter Received from Trial Judge, 8/13/24, at 1.

_____

[6] Although the order is dated May 22, 2024, copies were sent to the parties on May 23, 2024. **See** Pa.R.A.P. 108(b) (stating "the date of entry of an order … shall be the date on which the clerk makes the notation in the docket that written notice of entry of the order has been given").

On appeal, Father presents the eight issues he raised in his concise statement:

1. Did the court abuse its discretion in refusing defense counsel the opportunity to raise prior to final order the following exceptions: (1) that the determination of primary custody cannot be waived to a proceeding in front of a custody hearing officer as the law requires primary custody to be decided by the court; (2) that [e]xceptions was not the proper method of appeal given the matter was one of primary custody, and (3) that the [H]earing [O]fficer's complete failure to assess the … sixteen child custody factors rendered the Hearing Officer's recommended order completely unsupported by a proper consideration of the evidence, when the court gave no indication prior to the day of oral argument that it was refusing [Father's] oral argument and when refusing argument, the court hindered [Father's] right to raise all matters prior to [the court issuing a] final order?

2. Did the court err as a matter of law in permitting the parties to waive the custody hearing for determination by the [H]earing [O]fficer when the matter to be decided was one of primary … custody?

3. Did the court err as a matter of law when[,] after allowing the matter of primary custody to be heard by a hearing officer, it permitted an appeal of the [H]earing [O]fficer's decision to be had on [e]xceptions instead of conducting its own independent review of the record or conducting a hearing *de novo* when Pennsylvania [l]aw requires that matters of primary custody are to be determined by the court?

4. Did the court err as a matter of law in knowingly setting forth an [o]rder that is contrary to a proper consideration of the evidence of record as applied to the mandatory sixteen (16) child custody factors, set forth in 23 Pa.C.S. § 5328(a)[,] when the issue of the complete failure to assess these factors is visible on the face of the Hearing Officer's [o]pinion, when the missing analysis was raised in [Father's] brief prior to final order and when, because there is no 16 factor analysis contained in the Hearing Officer's [o]pinion, there is no recited factual basis for the [r]ecommended [o]rder?

5. Did the court err as a matter of law in failing to address the enumerated exception raised by [Father] that the Hearing Officer

awarded primary physical custody to Mother despite clear and convincing evidence that [C]hild was benefiting from an equally shared physical custody arrangement between [Father] and [Mother]?

6. Did the court err as a matter of law in failing to address the enumerated exception raised by [Father] that the Hearing Officer incorrectly determined that the investigation by Greene County Children and Youth Services was determined to be "unfounded," and ignoring testimony from Father … that an active investigation was ongoing by the Pennsylvania State Police and that the testimony of Mother and her witness confirmed [C]hild had suffered an abusive incident in [M]other's home when abuse and child safety are statutory factors?

7. Did the court err as a matter of law in failing to address the enumerated exception raised by [Father] that the Hearing Officer failed to consider the best interest of [C]hild when clear and convincing evidence showed [M]other had failed to provide adequate safeguards to protect [C]hild in her home when abuse and safety are statutory factors?

8. Did the court err as a matter of law in failing to address the enumerated exception raised by [Father] that the Hearing Officer ignored clear and convincing evidence that [C]hild's best interests, and the convenience of both parties, would have been best served by having [C]hild remain in the Uniontown School District, [F]ather's home district, which is in close proximity to both Father's home and Mother's work during the day, instead of pulling [C]hild from the school in which he was enrolled and returning him to [M]other's district when [F]ather, whose custody is during the week, provides the majority of the school transportation and when neither parent is within that school district during the majority of school days?

Father's Brief at 7-10.

*DISCUSSION*

To begin, we recognize that we "review a trial court's determination in a custody case for an abuse of discretion, and our scope of review is broad." ***C.A.J. v. D.S.M.***, 136 A.3d 504, 506 (Pa. Super. 2016) (citation omitted).  We

defer to the trial judge regarding credibility and the weight of the evidence. *Id.* However, the "trial judge's deductions or inferences … do not bind this Court," and we may reject the trial court's conclusions "if they involve an error of law or are unreasonable in light of its factual findings." *Id.* In addition, "a challenge to a court's process is a question of law for which our standard of review is *de novo* and our scope of review is plenary." *Raymond v. Raymond*, 279 A.3d 620, 626 (Pa. Super. 2022) (citation omitted).

In his first four issues, Father raises related claims of procedural error. Father argues:

> [T]he matter should have never been decided by a hearing officer and it was plain legal error by the [trial] court to disregard the law … by giving the parties a choice…. [Further], the remedy should not be a decision based on exceptions as [no legal authority] supports that remedy. …
>
> [N]otwithstanding [F]ather's position … that … he is entitled to a hearing in front of the trial court, … the 16 [statutory custody] factors were not addressed by the [H]earing [O]fficer. …
>
> The … need for a *de novo* hearing and the missing 16 factors was placed squarely in front of the trial court in [F]ather's brief on exceptions. Father maintains these legal errors were raised prior to [the] final order and should have been addressed by the trial court. Father argues that a party's right to a trial in front of the trial court … is not waivable and it was error for the court to dismiss the argument….

Father's Brief at 13-14. Father's argument has merit.

*Custody Hearing*

In his brief in support of exceptions, Father argued that "allowing a hearing officer, rather than the judge, to determine primary custody is a

violation of Pennsylvania law. There is no provision in the law for a 'waiver' of this mandate when primary custody is in issue." Brief in Support of Exceptions, 5/2/24, at 1. He makes the same argument in his appellate brief. *See* Father's Brief at 13, 15-20. Father asserts the trial court "is aware of the constitutional implications," and committed legal error by instructing the parties that they had "an option to choose a hearing officer or the trial court to decide their issues of child custody." **Id.** at 17. We agree that the trial court should have heard the custody matter.

It is undisputed that Mother sought primary physical custody. **See** Complaint for Custody, 3/29/22, at 2-3; N.T., 7/31/23, at 6. This Court has explained:

> While the Rules of Civil Procedure authorize the appointment of a hearing officer to adjudicate actions for **partial** custody, it is well-settled that actions for **primary** custody must be heard by a trial court judge. **See** Pa.R.C[iv].P. 1915.4-1(a), 1920(a)(2)(ii); **see also Littman v. Van Hoek**, 789 A.2d 280, 282 (Pa. Super. 2001); **and see Van Dine v. Gyuriska,** … 713 A.2d 1104 ([Pa.] 1998).

**Raymond**, 279 A.3d at 626 (emphasis in original, footnote omitted). "Both statutory law and our Supreme Court mandate that matters relating to primary physical custody be heard by a trial judge." **Littman**, **supra**. Rule of Civil Procedure 1915.4-1 provides alternative procedures for partial custody actions, and Rule 1915.4-2 permits "a hearing officer [to] receive evidence and hear argument" in matters involving partial custody. Pa.R.Civ.P. 1915.4-1, 1915.4-2(b)(2).

- 10 -

Similarly, the relevant Greene County Rule states:

Local Rule G1915.4-2 CUSTODY HEARING

1. The parties are now on notice that Greene County follows alternative hearing procedure Pa.R.C[iv].P. 1915.4-2 wherein ***an action for partial custody may be heard by a [h]earing [o]fficer as outlined in Pa.R.C[iv].P. 1915.4-2(b)***.

2. When any petition/complaint for custody or modification of custody is filed, the District Court Administrator shall set the matter before a Custody Conference Officer with a view towards reaching an agreement through conciliation. If an agreement is reached, the Custody Conference Officer will propose an [o]rder for confirmation by the Court of Common Pleas.

3. ***In the event the matter is for partial custody*** and there is no existing order and no agreement is reached between the parties at the conciliation conference, ***the hearing officer may consider evidence and enter a recommended interim custody order*** pending the pretrial conference.

4. In addition, if an agreement cannot be reached through conciliation, the matter will be set before the [c]ourt for a pre-trial conference. The [c]ourt will attempt to facilitate an agreement. If no agreement is reached, the [c]ourt will then determine whether the matter shall be sent to a Custody Hearing Officer or heard by the [c]ourt. ***In the event the matter is for partial custody, it shall be sent to the [c]ustody [h]earing [o]fficer and shall be conducted of record and appeal shall be by exceptions to the Court of Common Pleas***.

Greene County Rule G1915.4-2 (emphasis added).

While the law requires that primary physical custody be decided by the trial court, the trial court may cure its erroneous appointment of a hearing officer by conducting *de novo* review. For example, in ***Raymond***, this Court recognized that a "judge should never have scheduled the[] complaint for sole

- 11 -

custody before the master."[7] ***Raymond***, 279 A.3d at 626. Nonetheless, we found "the trial court cured this mistake when it effectively conducted a *de novo* review," and "'determine[d] the merits of the [legal question] and issue[d] its own findings of fact and conclusions of law.'" ***Id.*** (citations omitted). The trial court heard exceptions in ***Raymond***. This Court explained:

> The exceptions proceeding was ostensibly a review of the master's decision; in actuality, the trial court considered all that had transpired since the master's report…. The court considered the[] facts, concluded that none of the salient facts were disputed, applied those facts to render new legal conclusions[,] and independently determined the merits of the [] claims.
>
> Thus, the trial court's exceptions review was akin to an adjudication … in the first instance. In that sense, not only did the trial court cure its erroneous master appointment, but the court was also able to dispose of [a] standing issue without conducting an evidentiary hearing.

***Id.*** at 626–27 (citations and footnote omitted). Accordingly, we held that "the trial court's procedure did not constitute reversible error." ***Id.*** at 627.

Here, like ***Raymond***, the trial court erred in permitting the parties to proceed before the Hearing Officer. However, the error was not cured because the trial court adopted the Hearing Officer's opinion and recommended order, and the court's exceptions review was not "akin to an adjudication … in the first instance." ***Id.*** at 626-27. Thus, the error compels us to vacate the order

---

[7] The Court identified the terms "master," "conference officer" and "hearing officer" as "functional equivalents." ***Raymond***, 279 A.3d at 626 n.8. "We also note[d] that 'master' is now a disfavored term and should be replaced by 'hearing officer.'" ***Id.*** (citation omitted).

and remand the matter to the trial court. On remand, the parties may continue to litigate before the trial court. We therefore address the statutory custody factors.

*Statutory Custody Factors*

Neither the Hearing Officer nor the trial court conducted an assessment of the sixteen custody factors as set forth in 23 Pa.C.S. § 5328(a). Section 5328(a) states:

> **(a) Factors.--**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving substantial weighted consideration to the factors specified under paragraphs (1), (2), (2.1) and (2.2) which affect the safety of the child, including the following:
>
> (1) Which party is more likely to ensure the safety of the child.
>
> (2) The present and past abuse committed by a party or member of the party's household, which may include past or current protection from abuse or sexual violence protection orders where there has been a finding of abuse.
>
> (2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).
>
> (2.2) Violent or assaultive behavior committed by a party.
>
> (2.3) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party if contact is consistent with the safety needs of the child.
>
> (3) The parental duties performed by each party on behalf of the child.
>
> (4) The need for stability and continuity in the child's education, family life and community life, except if changes are necessary to protect the safety of the child or a party.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's developmental stage, maturity and judgment.

(8) The attempts of a party to turn the child against the other party, except in cases of abuse where reasonable safety measures are necessary to protect the safety of the child. A party's reasonable concerns for the safety of the child and the party's reasonable efforts to protect the child shall not be considered attempts to turn the child against the other party. A child's deficient or negative relationship with a party shall not be presumed to be caused by the other party.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child or self from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

"The court shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S. § 5323(d). The trial court "must expressly consider" the factors "in order to comply with the [statutory] requirements, and failure to do so amounts to an error of law." *M.J.M. v. M.L.G.*, 63 A.3d 331, 336 (Pa. Super. 2013) (citation omitted). "Ideally, trial courts should address the statutory factors, either orally in open court or in [a] written opinion, contemporaneously with the issuance of the custody order." *C.B. v. J.B.*, 65 A.3d 946, 955 (Pa. Super. 2013). The record "must be clear on appeal that the trial court considered all the factors." *A.V. v. S*.*T.*, 87 A.3d 818, 822-23 (Pa. Super. 2014).

Here, the only reference to the custody statutory factors is the Hearing Officer's statement that he recommended the order, "[a]fter a thorough examination of the evidence produced in this matter, and in consideration of the custody factors contained in 23 Pa.C.S. § 5321[*sic*]." Opinion and Recommended Order, 9/28/23, at 10. Accordingly, we emphasize that the law requires that a custody order be supported by express consideration of the statutory custody factors.

*Trial Court Opinion*

Finally, we note the disadvantage of the trial court's statement, in lieu of an opinion, "rely[ing] on its Order dated May 22, 2024," which stated only that "after considering the exceptions filed and the briefs for and against," the court denied Father's exceptions and affirmed the Hearing Officer's opinion

and recommended order "as a final custody order." Statement Pursuant to Pa.R.A.P. 1925, 7/1/24; Order, 5/23/24.

The trial court acknowledged receipt of Father's concise statement, but never addressed Father's issues. "Normally, a trial judge may not simply defer to earlier rulings … or decline to address an issue, as this would defeat the purpose of ensuring thorough consideration of the issues at the trial court level." *Commonwealth v. Pate*, 617 A.2d 754, 759 (Pa. Super. 1992) (citations omitted). This Court has explained:

> Rule 1925 is intended to aid trial judges in identifying and focusing upon those issues that the parties plan to raise on appeal. Rule 1925 is thus a crucial component of appellate process.

*Commonwealth v. McBride*, 957 A.2d 752, 758 (Pa. Super. 2008) (citations omitted). Moreover:

> The purpose of the rule is two-fold. First, it gives the appellate court a reasoned basis for the trial court's disposition of the challenged orders. Second, it requires the judge to thoroughly consider his decision…, in order to correct any problems that occurred at the trial level. This prevents unnecessary appeals.

*Pate*, 617 A.2d at 758–59 (citations omitted).

Consistent with the foregoing authority, we encourage the trial court in future appeals to "file of record at least a brief opinion of the reasons for the order, or for the rulings or other errors complained of" pursuant to Pa.R.A.P. 1925(a)(1) (General rule) and Pa.R.A.P. 1925(a)(2)(ii) (Children's fast track appeals).

*CONCLUSION*

For the above reasons, we vacate the order denying Father's exceptions to the order adopting the Hearing Officer's opinion and recommended order. Within 21 days of this decision, the parties shall advise the trial court whether they still seek judicial resolution of their custody matter. If so, the court shall confer with the parties and promptly schedule proceedings consistent with applicable legal authority.

Order vacated. Case remanded for proceedings consistent with this decision. Jurisdiction relinquished.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 3/4/2025