J-A06025-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| MATTHEW W. LAND | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KARA LYNN LAND | : | No. 1164 WDA 2025 |

Appeal from the Order Entered August 26, 2025
In the Court of Common Pleas of Westmoreland County Civil Division at
No(s):  21DO00956

BEFORE:  OLSON, J., MURRAY, J., and BECK, J.

MEMORANDUM BY MURRAY, J.:                    **FILED: April 8, 2026**

In this child custody action, Matthew W. Land (Father) appeals from the

order granting Father and Kara Lynn Land (Mother) shared legal custody,

Father primary physical custody, and Mother partial physical custody, with

respect to their two daughters, D.L. (born in August 2007) and M.L. (born in

April 2012) (collectively, Children).  We affirm.

We briefly summarize the procedural background.  The parties married

in 2006.  Father filed for divorce in 2021 and sought primary physical custody

of Children.[1]  The first custody order, entered on June 13, 2022, granted the

parties shared legal custody of Children.[2]  ***See*** Order, 6/13/22, at 1.  The

---

[1] The parties' divorce became final in 2023.

[2] The parties continued to share legal custody in all subsequent custody
orders.

order initially granted Father primary physical custody and Mother partial physical custody, but provided for a progressive schedule that transitioned the parties to shared physical custody by August 2022. *Id.* at 2-3.

On December 7, 2022, with the consent of both parties, the trial court entered a second custody order. Sometime between the first and second orders, Mother moved to Ohio, approximately two hours away from Father's residence in Westmoreland County, Pennsylvania. The second order granted primary physical custody to Father, with Mother exercising partial physical custody every other weekend. *See* Order, 12/7/22, at 3 (unpaginated). Custody exchanges were to occur in Westmoreland County, with Mother responsible for transportation. *Id.* at 5 (unpaginated).

On July 18, 2024, Mother filed a petition for modification of the December 7, 2022, order, seeking increased periods of physical custody. On September 12, 2024, the parties and Children participated in a conciliation conference before a hearing officer.

On September 27, 2024, upon the hearing officer's recommendation, the trial court entered a custody order modifying the parties' custody arrangement, in pertinent part, as follows: Mother was to exercise partial physical custody of D.L. only as agreed upon by the parties and D.L.; Mother was to exercise partial physical custody of M.L. for three weekends per month; custody exchanges on two of the three weekends were to occur in Westmoreland County, with Mother responsible for transportation; on the

third weekend, the custody exchange was to occur at a location in Cranberry Township, Pennsylvania, approximately equidistant between the parties' respective residences, with the parties sharing responsibility for transportation; and the parties were to obtain a therapist for M.L. and follow the therapist's recommendations. **See** Order, 9/27/24, at 2-3.

The September 27, 2024, order provided that it would become a final order unless either party filed a praecipe for a pre-trial conference within thirty days. On October 10, 2024, Mother filed a praecipe for a pre-trial conference.[3] The trial court held a pre-trial conference on January 6, 2025.

A two-day custody trial took place on June 16-17, 2025. The trial court heard testimony from Father, Mother, and Mother's husband. **See** N.T., 6/16/25. Additionally, the court interviewed D.L. and M.L. in chambers, outside the parties' presence. **See** N.T., 6/17/25.

_____

[3] On or before October 8, 2024, Father filed a petition for special relief. **See** Order, 10/8/24 (indicating a hearing would be scheduled on Father's petition for special relief). Our review discloses the petition does not appear on the docket and is not contained in the certified record. The petition apparently involved Father's allegation that, while Mother had physical custody of M.L. in September 2024, a police officer "caught" M.L. "having sex in the parking lot at [a] high school football game with a boy whom Father had warned Mother about a year prior…." Father's Pre-Trial Statement, 6/6/25, at 4 (unpaginated). The petition apparently sought to suspend Mother's physical custody of M.L. **See** Mother's Pre-Trial Statement, 12/30/24, at 2 (unpaginated). Following a December 5, 2024, hearing, at which only Father testified, the trial court entered an order denying the petition. **See** Order, 1/3/25. The order further provided, "[u]pon agreement of the parties," that, _inter alia_, M.L. was not permitted to use social media or "bring friends with her during her visits with Mother." **Id.**

On July 10, 2025, the trial court entered an opinion and order. The order provided, in pertinent part, as follows: Father was granted primary physical custody of both Children; Mother was to exercise partial physical custody of D.L. only as agreed upon by the parties and D.L.[4]; Mother was to exercise partial physical custody of M.L. every other weekend; Mother was entitled to exercise physical custody of M.L. during a third weekend each month, provided that this custody was exercised in the Westmoreland County area, near Father's residence; custody exchanges were to occur in Cranberry Township, with the parties sharing responsibility for transportation. *See* Order, 7/10/25, ¶¶ 2, 3, 8.

On August 7, 2025, Father filed a petition for reconsideration of the July 10, 2025, order. On August 26, 2025, the trial court entered an order making two minor changes to its July 10, 2025, order, but otherwise denied Father's petition for reconsideration. *See* Order 8/26/25 (changing language from "third weekend" to "additional weekend," and changing the Cranberry Township custody exchange location from GetGo to Sheetz).

Father filed a timely notice of appeal and contemporaneous Pa.R.A.P. 1925(a)(2)(i) concise statement. The trial court filed an order under Rule 1925(a), incorporating its July 10, 2025, opinion.

---

[4] The trial court found that D.L. "is about to be an adult" and "wishes to continue to see Mother on her [own] terms." Trial Court Opinion, 7/10/25, at 10 (unpaginated).

- 4 -

Preliminarily, we observe that D.L. attained the age of 18 in August 2025. D.L. is therefore no longer a "child" as defined by the Child Custody Act. **See** 23 Pa.C.S.A. § 5322 (defining a child as "[a]n unemancipated individual under 18 years of age"). Accordingly, neither this Court nor the trial court have subject matter jurisdiction over D.L. **See M.B.S. v. W.E.**, 232 A.3d 922, 928 (Pa. Super. 2020) (observing that, with respect to a child about to turn 18 during the pendency of the appeal, "neither this Court nor the trial court will have subject matter jurisdiction over [the child] … under the Child Custody Act" after the child's 18th birthday). Though Father's appellate brief does not explicitly acknowledge that D.L. is no longer subject to the instant custody proceedings, Father appears to limit his argument to the custody of M.L. **See** Father's Brief at 18-26 (argument referring to "the child" in the singular). To the extent this appeal may relate to the custody of D.L., it is moot. **See M.B.S.**, 232 A.3d at 928 (concluding that, in light of the subject child's imminent 18th birthday, "all of [mother's appellate issues] are moot because we are unable to provide the relief she seeks with an order that will have legal force or effect").

Father presents seven questions for our review:

1. Did the trial court commit an abuse of discretion in finding that Mother is capable of ensuring … the safety of [M.L.]?

2. Did the trial court commit an abuse of discretion and/or error of law by failing to consider the well-reasoned preference of [M.L.], based on [M.L.'s] maturity and judgment?

- 5 -

3. Did the trial court commit an abuse of discretion in not finding [that the custody factor regarding] Father's willingness and ability to cooperate with Mother [favored Father]?

4. Did the trial court commit an abuse of discretion in finding that Mother is addressing her mental health "concerns" and that Father is not?

5. Did the trial court commit an abuse of discretion in changing the [custody] exchange location to one that is not in [M.L.'s] best interest and is not supported by the evidence and testimony presented at trial?

6. Did the trial court commit an abuse of discretion and/or an error of law by basing its opinion on findings of fact that are not supported by the evidence presented during the trial?

7. Did the trial court commit an abuse of discretion and/or an error of law by not dismissing Mother's petition for modification of custody, as there was no substantial change in circumstances that affected [M.L.'s] best interest?

Father's Brief at 9-11 (some capitalization modified; issues reordered).

"Our standard of review over a custody order is for a gross abuse of discretion." *Rogowski v. Kirven*, 291 A.3d 50, 60 (Pa. Super. 2023) (citation omitted); *see also King v. King*, 889 A.2d 630, 632 (Pa. Super. 2005) ("It is not this Court's function to determine whether the trial court reached the 'right' decision; rather, we must consider whether, based on the evidence presented, giv[ing] due deference to the trial court's weight and credibility determinations, the trial court erred or abused its discretion[.]" (citation and some quotation marks omitted)). "A trial court abuses its discretion if, in reaching a conclusion, it overrides or misapplies the law, or the record shows that the trial court's judgment was either manifestly unreasonable or the

- 6 -

product of partiality, prejudice, bias or ill will." *In the Int. of J.R.*, 333 A.3d 446, 451-52 (Pa. Super. 2025) (citation and brackets omitted). Further,

> the discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*B.S.G. v. D.M.C.*, 255 A.3d 528, 533 (Pa. Super. 2021) (citations and brackets omitted).

"This Court's scope of review in custody cases consistently has been defined by our Supreme Court as very broad." *King*, 889 A.2d at 632 (citations omitted). "[W]hile we have a broad scope of review, we cannot nullify the fact-finding function of the judge presiding over the custody hearing or their ability to make credibility determinations." *Velasquez v. Miranda*, 321 A.3d 876, 891 (Pa. 2024) (citation omitted); *McGee v. McDowell*, 333 A.3d 383, 389 (Pa. Super. 2025) ("We defer to the trial judge regarding credibility and the weight of the evidence."). It is well settled that

> [t]he parties cannot dictate the amount of weight the trial court places on evidence. … Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

*R.M.G. v. F.M.G.*, 986 A.2d 1234, 1237 (Pa. Super. 2009) (citation omitted)

In child custody cases, "the best interest of the child is paramount." *Taylor v. Smith*, 302 A.3d 203, 207 (Pa. Super. 2023) (citation omitted). "This standard requires a case-by-case assessment of all the factors that may

legitimately affect the physical, intellectual, moral and spiritual well-being of the child." *M.J.M. v. M.L.G.*, 63 A.3d 331, 334 (Pa. Super. 2013) (citation omitted). "Subsection 5328(a) of the Child Custody Act sets forth 16 factors that a court must consider before making any custody determination, including a modification of a custody order." *E.B. v. D.B.*, 209 A.3d 451, 460 (Pa. Super. 2019). The court must "delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). "It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case." *Taylor*, 302 A.3d at 207 (citation omitted).

Before reaching Father's arguments, we must address his compliance with our appellate rules. Pennsylvania Rule of Appellate Procedure 2119(c) provides that,

> [i]f reference is made to the pleadings, evidence, charge, opinion or order, or any other matter appearing in the record, the argument [section of an appellate brief] must set forth, in immediate connection therewith, or in a footnote thereto, a reference to the place in the record where the matter referred to appears….

Pa.R.A.P. 2119(c); *see also* Pa.R.A.P 2119(d) ("When the finding of, or the refusal to find, a fact is argued, the argument must contain a synopsis of all the evidence on the point, with a reference to the place in the record where the evidence may be found"); Pa.R.A.P. 2117(a)(4) (requiring a brief's statement of the case to contain a factual narrative supported by citations to the record). "When an allegation is unsupported by any citation to the record,

such that this Court is prevented from assessing the issue and determining whether error exists, the allegation is waived for purposes of appeal." ***C.H.L. v. W.D.L.***, 214 A.3d 1272, 1278 (Pa. Super. 2019) (citation omitted). We will not "scour the record to find evidence to support an argument; instead, we will deem the issue to be waived." ***Id.*** (citation omitted).

Instantly, Father's counseled brief contains no citations to the record. ***See generally*** Father's Brief. His argument consists entirely of assertions regarding the evidence presented at trial, and challenges to the trial court's findings and conclusions based on that evidence. Yet Father never once cites the trial transcript or the trial court's opinion. ***Id.*** Father's failure to support his argument with citations to the record is a substantial defect that significantly impairs our ability to perform appellate review. We decline to scour the record to find support for Father's arguments; rather, we deem all of them waived. ***See*** Pa.R.A.P. 2119(c); ***C.H.L.***, 214 A.3d at 1278.

Even if not waived based on his failure to cite the record, Father's issues would merit no relief. Father's arguments are mostly "disputes with the trial court's findings of fact and determinations regarding credibility and weight of the evidence." ***D.R.L. v. K.L.C.***, 216 A.3d 276, 285-86 (Pa. Super. 2019). However, under this Court's standard of review, it "is not our role" to "re-find facts, re-weigh evidence, and re-assess credibility." ***Id.*** at 286. Our review discloses that the trial court performed a careful and thorough analysis of the factors set forth in subsection 5328(a) of the Child Custody Act. ***See***

***generally*** Trial Court Opinion, 7/10/25.[5]   Keeping in mind our deferential standard of review, we briefly address why Father's arguments—to the extent we can understand them—would warrant no relief.[6]

In his first issue, Father argues the trial court abused its discretion in finding that Mother is capable of ensuring M.L.'s safety. ***See*** Father's Brief at 20-22.   Father baldly asserts that "[i]t is apparent that the trial court was biased in making its decision rather than properly weighing the evidence and considering [M.L.'s] best interest." ***Id.*** at 20-21.   Father points to his concerns over M.L.'s use of social media; the incident in which M.L. was caught having sex; and M.L.'s exposure to arguments between Mother and Mother's former, now-deceased paramour. ***Id.*** at 21.

In its opinion, the trial court "note[d] Father's concerns," but concluded "both parties appear equally capable of ensuring that [C]hildren are kept safe."   Trial Court Opinion, 7/10/25, at 6 (unpaginated) (considering the

_____

[5] Effective August 29, 2025, the General Assembly amended the custody factors set forth in 23 Pa.C.S.A. § 5328. ***See*** Act of June 30, 2025, P.L. 18, No. 11, § 1.   Instantly, the trial court properly applied the version of section 5328 effective from August 13, 2024, to August 28, 2025.   We apply and cite that version here.

[6] In addition to its lack of any record citation, Father's brief contains few citations to legal authority, and his arguments are conclusory and underdeveloped. ***See generally*** Father's Brief; ***see also*** Pa.R.A.P. 2119(a) (mandating that an appellant develop an argument with citation to and analysis of relevant legal authority); ***C.H.L.***, 214 A.3d at 1277 ("It is not the duty of this Court to act as appellant's counsel," and we "shall not develop an argument for an appellant…." (citations omitted)).

custody factor under 23 Pa.C.S.A. § 5328(a)(1) ("Which party is more likely to ensure the safety of the child")); *see also id.* at 11 (unpaginated) (finding M.L. has been exposed to arguments "in both Mother's and Father's homes"); *id.* (finding M.L. "only utilized YouTube and Pinterest as forms of social media," and Mother must enter a password on M.L.'s cell phone before M.L. can access social media); N.T., 6/17/25, at 49 (M.L.'s testimony that, after each time she uses her cell phone, Mother "goes through everything on [the] phone" to monitor M.L.'s usage). Our review confirms the record supports the trial court's findings, and we would discern no abuse of discretion in its determination that the parties are equally capable of ensuring M.L.'s safety.

In his second issue, Father argues the trial abused its discretion in failing to consider M.L's well-reasoned preference. *See* Father's Brief at 22; *see also* 23 Pa.C.S.A. § 5328(a)(7) (requiring consideration of "[t]he well-reasoned preference of the child, based on the child's developmental stage, maturity and judgment). Father asserts M.L.'s testimony established that she "did not want any additional custody with Mother and that she specifically did not want to spend weeks during the summer with her Mother in Ohio." Father's Brief at 22.

In its opinion, the trial court found that M.L.'s preference "would be for Mother to have custody every other weekend." Trial Court Opinion, 7/10/25, at 12 (unpaginated). The trial court found that spending three weekends per month in Ohio was "difficult" for M.L. because of her participation in

extracurricular activities in Westmoreland County. ***Id.***; ***see also*** N.T., 6/17/25, at 34 (M.L.'s testimony that she likes the schedule of every other weekend with Mother in Ohio, but that three weekends there is "kind of hard sometimes" because M.L. "ha[s] a whole bunch of sports" in Westmoreland County). However, M.L. testified that it "would be pretty cool if" Mother spent more time with M.L. in Westmoreland County. N.T., 6/17/25, at 51-52. Thus, contrary to Father's assertions, the trial court's custody order comports with M.L.'s stated preference. ***See*** Order, 7/10/25, ¶ 3 (providing Mother shall have physical custody of M.L. in Ohio every other weekend, and shall be entitled to an additional weekend of custody each month, to be exercised in Westmoreland County). Father's second issue would warrant no relief.

In his third issue, Father argues the trial court abused its discretion in not finding that the custody factor involving the parties' willingness to cooperate with one another favored Father. ***See*** Father's Brief at 23; ***see also*** 23 Pa.C.S.A. § 5328(a)(13) (requiring consideration of "[t]he level of conflict between the parties and the willingness and ability of the parties to cooperate with one another"). Father's entire argument on this issue consists of two sentences:

> The parties provided the [trial] court with access to their communication [from] the Our Family Wizard application. The communication between the parties clearly reflects that Father attempts to be reasonable and to co-parent, while Mother is defensive, aggressive, and demeaning towards Father.

Father's Brief at 23.[7]

> Regarding this factor, the trial court found as follows:
>
> The level of conflict [between the parties] in this case is very high. It is evident that the parties have been unable to set aside their differences to preserve the best interest of the [C]hildren. [The p]arties continue to refer to one another using derogatory language. Father continues to bring up Mother's alleged affair with her brother[, Maternal Uncle]. Mother engaged in negative behavior during custody exchanges. All of these behaviors are impacting the [C]hildren and breed negative perceptions of the [parties].
>
> Mother reported that Father often makes plans with [M.L.] during [Mother's] weekends of custody, making Mother forfeit entire weekends of custody. Mother further stated that she accommodates Father's requests [that Mother forfeit her custody time] for the benefit of [M.L.] Father then faults Mother for not visiting [M.L.] Custody exchanges became so contentious that [the] parties were ordered to remain in their vehicles during the exchanges.
>
> It is clear that the discord between the parties is not going to resolve itself any time soon. It is the [c]ourt's hope that the parties learn to focus on the [C]hildren and [not] on their tumultuous relationship with one another.
>
> This factor favors neither party.

Trial Court Opinion, 7/10/25, at 16 (unpaginated).

Our review confirms that the record supports the trial court's findings and conclusion. We observe that Father's underdeveloped argument fails to take issue with the particular findings that informed the trial court's consideration of this factor. Thus, Father's third issue would not merit relief.

---

[7] Father fails to cite the record or otherwise direct this Court's attention to any exhibit which may represent the communications he references.

In his fourth issue, Father argues the trial court abused its discretion in finding that Mother is addressing her mental health concerns and that Father is not addressing his. **See** Father's Brief at 23; **see also** 23 Pa.C.S.A. § 5328(a)(15) (requiring consideration of "[t]he mental and physical condition of a party or member of a party's household"). Father claims he testified that he "seeks therapy as needed and [seeks] comfort in the church." Father's Brief at 23. He further claims that Mother "has repeatedly denied having any mental health issues...." **Id.** at 24.

Regarding this factor, the trial court found as follows:

Mother reported that she is diagnosed with anxiety and depression. Mother stated that she was taking medication for both. Father testified that he participates in therapy for a period and then stops for a period. [D.L.] reported that both Mother and Father struggle to regulate their emotions[,] and that both [parties] could benefit from therapy. ...

While it appears that Mother is addressing her mental health concerns, it does not appear that Father is addressing his mental health needs on any sort of substantive basis. ... This factor slightly favors Mother.

Trial Court Opinion, 7/10/25, at 16 (unpaginated) (some paragraph breaks modified).

Our review confirms the record supports the trial court's findings, and we would discern no abuse of discretion in its conclusion regarding this factor. **See** N.T., 6/17/25, at 10 (D.L. testifying that Father "struggles with ... his emotional health" and "doesn't get therapy"; D.L. "can ... tell whenever [Father

is] not in a good mental health," and "it seems like [Father] needs time with a therapist").

In his fifth issue, Father argues the trial court abused its discretion in ordering that custody exchanges occur in Cranberry Township. *See* Father's Brief at 24-25. Father claims he testified "he did not feel safe in Cranberry because he believed Mother's husband had family in the area." *Id.* at 24. Father asserts that he "should not bear the brunt of Mother's move [to Ohio], by being ordered to drive [] an hour each way, to a halfway point four times a month." *Id.* at 25. Father further asserts that, assuming it is "in [M.L.'s] best interest to spend more time with Mother," M.L. and Mother could "be in the car [together] for four extra hours per month" if Mother bore full responsibility for transportation. *Id.*

In its opinion, the trial court determined that the custody factor requiring consideration of "[t]he proximity of the residences of the parties," 23 Pa.C.S.A. § 5328(a)(11), favored Father. Trial Court Opinion, 7/10/25, at 15 (unpaginated). The court found that the two-hour distance between the parties' residences "makes frequent custody exchanges difficult and inconvenient on the [C]hildren." *Id.* The trial court did not specifically address the custody exchange location. However, given the undisputed fact that the exchange location is a halfway point between the parties' residences, we would discern no abuse of discretion in the trial court's selection of that location.

In his sixth issue, Father argues there is no record support for the trial court's statement, in its opinion, that "[b]oth [C]hildren were made aware of Mother's alleged sexual encounters with Maternal Uncle…." Father's Brief at 19 (quoting, but not citing, Trial Court Opinion, 7/10/25, at 12 (unpaginated)). Father claims he has no knowledge of Children having been made aware of this allegation.[8] *Id.* at 20. Father "feels the [trial c]ourt's [o]pinion may have been greatly influenced by this error." *Id.*

The trial court made the statement in connection with its consideration of "[t]he attempts of a party to turn the child against the other party…." 23 Pa.C.S.A. § 5328(a)(8); *see also* Trial Court Opinion, 7/10/25, at 12-13 (unpaginated). The trial court determined this factor favored neither party, finding that it "is abundantly clear … that both parties continue to have negative things to say about one another." *Id.* at 13 (unpaginated). Even assuming Father is correct that the trial court made a factual error in stating Children had been made aware of the incest allegation, the record as a whole still supports the trial court's determination that this factor favored neither party. *See id.* 12 (unpaginated) ("During the [trial court's] in-camera interviews with [C]hildren, … both shared that the parties speak ill of one another"); N.T., 6/17/25, at 7-8 (D.L. testifying that Father speaks negatively about Mother, "mak[ing] it known that he doesn't like her very much" and

---

[8] Mother "denies that [the alleged incestuous] relationship ever existed…." Mother's Brief at 5.

"doesn't think highly of her"). Our review discloses no record support for Father's "feel[ing]" that the trial court's statement "greatly influenced" its decision. Father's Brief at 20. Thus, Father's issue would merit no relief.

In his seventh and final issue, Father argues the trial court abused its discretion in not dismissing Mother's petition for modification, because "there was no substantial change in circumstances that affected [M.L.'s] best interest." Father's Brief at 18. Father asserts that M.L. stated "she did not want Mother to have additional custody in Ohio," yet the trial court "proceeded to grant Mother a third weekend of custody in Ohio." *Id.* at 19.

The Child Custody Act provides that, "[u]pon petition, a court may modify a custody order to serve the best interest of the child." 23 Pa.C.S.A. § 5338(a); *see also K.D. v. E.D.*, 267 A.3d 1215, 1224 (Pa. Super. 2021) ("[C]ustody matters are a special creature. Unlike other actions which have a clear beginning, middle, and end, custody orders may be repeatedly modified." (citation and ellipses omitted)). A party requesting modification of custody has the burden to show that modification is in the child's best interest. *J.M.R. v. J.M.*, 1 A.3d 902, 911 (Pa. Super. 2010).

As set forth above in connection with Father's other issues, we would discern no abuse of discretion in the trial court's determination that the instant custody order is in M.L.'s best interest. Because the trial record supports the order, we would agree with the trial court that Mother met her burden to show the modification was in M.L.'s best interest. Further, our review discloses the

trial court did not grant Mother a third weekend of custody in Ohio. Rather, consistent with M.L.'s stated preference, the trial court granted Mother a third weekend to be exercised in Westmoreland County. *See* N.T., 6/17/25, at 51-52; Order, 7/10/25, ¶ 3. Father's final issue therefore would merit no relief.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

4/8/2026